**UNITED STATES of America,**

v.

**Douglas E. DATCHER.**

No. 3:92–00054.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 8, 1993.

Robert Anderson, Asst. U.S. Atty., Nashville, TN, for plaintiff.

Jude Lenahan, Asst. Federal Public Defender, Nashville, TN, for defendant.

## MEMORANDUM

WISEMAN, District Judge.

Before the court is the defendant's motion to argue the issue of punishment to the jury. After considering the historical role of the jury in our criminal justice system and the constitutional constraints on sentencing, this court grants the defendant's motion.[1]

### I

Douglas E. Datcher has been indicted for attempted distribution of a controlled substance, for conspiracy to distribute this substance, and for the use or carrying of a firearm in connection with this attempted distribution. If Mr. Datcher is convicted of the first charge only, he faces a substantial penalty.[2] If Mr. Datcher is convicted additionally of one or both of the remaining charges, he faces a significantly greater penalty.[3] Mr. Datcher faces, in short, a serious threat to his liberty.

Cognizant of this fact, Mr. Datcher desires that the jurors be likewise cognizant, in hopes this awareness would impact their deliberations over his guilt or innocence. In essence, Mr. Datcher hopes that the jury, when it learns of the draconian sentence hanging over his head, would deem this penalty too great for any offense Mr. Datcher may have committed and thus let him go free. This is an argument for the right of the jury to have that information necessary to decide whether a sentencing law should be

---

1. The defendant's full motion requested the right to argue possible punishment to the jury, the right to voir dire the jury on punishment, and the right to have a special jury instruction on possible punishment. This court grants only the right to argue punishment to the jury.

2. Mr. Datcher faces a minimum of ten years. *See* 21 U.S.C. § 841(a)(1). Depending on Mr. Datcher's criminal history, the existence of aggravating circumstances, and the amount of co-

caine the government seeks to prove by a preponderance of the evidence at the sentencing phase, the penalty for this single conviction could increase substantially. Mr. Datcher could receive some mitigation if he accepted responsibility or aided the government in other prosecutions.

3. Conviction on the conspiracy count would add ten years, and conviction on the firearm count would add five years. *See* 21 U.S.C. § 846; 18 U.S.C. § 924(c).

nullified. This is not an argument for the right to have the jury instructed on jury nullification.[4]

## II

The drafters of the Constitution "clearly intended [the right of trial by jury] to protect the accused from oppression by the Government." *Singer v. United States*, 380 U.S. 24, 31, 85 S.Ct. 783, 788, 13 L.Ed.2d 630 (1965) (citations omitted); *see Duncan v. Louisiana*, 391 U.S. 145, 152–57, 88 S.Ct. 1444, 1449–51, 20 L.Ed.2d 491 (1968) ("The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government."). Part of this protection is embodied in the concept of jury nullification: "In criminal cases, a jury is entitled to acquit the defendant because it has no sympathy for the government's position." *United States v. Wilson*, 629 F.2d 439, 443 (6th Cir.1980). "The Founding Fathers knew that, absent jury nullification, judicial tyranny not only was a possibility, but was a reality in the colonial experience."[5] Although we may view ourselves as living in more civilized times, there is obviously no reason to believe the need for this protection has been elimi-

nated. Judicial and prosecutorial excesses still occur,[6] and Congress is not yet an infallible body incapable of making tyrannical laws.

The power of a jury to nullify extends back to seventeenth century England. In *Bushell's Case*, Vaughn. 135, 124 Eng.Rep. 1006 (C.P. 1670), William Penn was acquitted of unlawful assembly notwithstanding damning facts, and Justice Vaughan, rather than impose fines or terms of imprisonment on the jurors as had been the custom, held that acquittal was a judicial act punishable only by attaint, an obsolete penalty by 1670. The roots of jury nullification in this country reach back to 1735 and the prosecution of Peter Zenger for seditious libel. There the defendant admitted the facts charged but pleaded non-culpability, and the jury acquitted. *See* J. Alexander, *A Brief Narration of the Case and Trial of John Peter Zenger* (1963); *see also United States v. Dougherty*, 473 F.2d 1113, 1130 (D.C.Cir.1972). "In the century following the *Zenger* case, it was generally recognized in American jurisprudence that the jury, agent of the sovereign people, had a right to acquit those whom it felt it unjust to call criminal." *Everett v. United States*, 336 F.2d 979, 986 (D.C.Cir. 1964) (Wright, J., dissenting) (footnote omitted).

The Supreme Court has consistently endorsed the traditional power of the jury to

---

4. Such a request would have to be denied. *See United v. Avery*, 717 F.2d 1020, 1027 (6th Cir. 1983) (upholding refusal to give an instruction on jury nullification because, "[a]lthough jurors may indeed have the power to ignore the law, their duty is to apply the law as interpreted by the court and they should be so instructed"), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984); *United States v. Newman*, 743 F.Supp. 533, 535 (M.D.Tenn.1990) ("A defendant in a criminal proceeding is not entitled to have a nullification instruction submitted to the jury."). This court would not consent to abdicating its role as impartial giver of the law. This court would not engage in behavior before the jury that in any way encouraged nullification of a law. This court consents only to allowing the defendant to argue those facts that could lead a jury, *sua sponte*, to nullify a particular law.

5. Steven I. Friedland, "On Common Sense and the Evaluation of Witness Credibility," 40 *Case W.Res.L.Rev.* 165, 173 (1990); *see also* Colleen P.

Murphy, "Integrating the Constitutional Authority of Civil and Criminal Juries," 61 *Geo.L.J.* 723, 750 (1993) ("[The right to jury trial] stems from the Founders' belief that jury trial constitutes a valuable buffer against governmental oppression in both the civil and criminal contexts." (footnote omitted)).

6. *See, e.g.*, "Excerpts from Graham Ruling," *St. Petersburg Times*, June 25, 1993, at 6 (removal of county judge for conduct unbecoming a member of the judiciary, including abuse of sentencing power); Bruce Fein, "Prosecutorial Excess, or Bullies with Pulpits," *N.J.L.J.*, June 21, 1993, at 18 (detailing prosecutorial abuse); *see also Morrison v. Olson*, 487 U.S. 654, 727–28, 108 S.Ct. 2597, 2637–38, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting) (discussing the "vast power and immense discretion that are placed in the hands of a prosecutor with respect to the objects of his investigation" and the need for checks on this power).

nullify a law or a specific conviction.[7] In *Sparf v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), the Court ruled that, although a jury does not have the right to decide the law and facts of a case, neither does the judge have the right to instruct a jury that it must convict even if evidence against a defendant is great. *See id.* at 102, 105–07, 15 S.Ct. at 293, 294–95. After *Sparf*, in effect "[t]he right [to nullify] was gone, but the power remained."[8] In *Horning v. District of Columbia*, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185 (1920), Justice Holmes, writing for the majority, explicitly acknowledged this power: "the jury has the power to bring in a verdict in the teeth of both law and facts." *Id.* at 138, 41 S.Ct. at 54. The continued prohibition on directed verdicts of guilt, on the set aside of not guilty verdicts, and on the use of special interrogatories in criminal cases, as well as the allowance of inconsistent verdicts, can only be understood as arising from respect for the jury's power to disregard the law and facts of a case in order to serve justice. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977) ("[A] trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict ... regardless of how overwhelmingly the evidence may point in that direction."); *United Brotherhood of Carpenters and Joiners of America v. United States*, 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973 (1947) ("[A] judge may not direct a verdict how conclusive the evidence."); *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) ("Consistency in the verdict is not necessary. . . . 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" (citation omitted)); *United States v. Wilson*, 629 F.2d 439, 441–44 (6th Cir.1980) (discussing the reasons against use of special verdict forms in criminal cases).

■ This respect for nullification flows from the role of the jury as the "conscience of the community" in our criminal justice system. *Witherspoon v. Illinois*, 391 U.S. 510, 519 & n. 15, 88 S.Ct. 1770, 1775 & n. 15, 20 L.Ed.2d 776 (1968). As Justice White wrote in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (considering whether a criminal jury must have twelve members), "the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the common-sense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." *Id.* at 100, 90 S.Ct. at 1905. This interposition serves the essential purpose of the jury trial, which is "to prevent oppression by the Government."[9] *Id.* And it is this essential purpose that is to be used in determining the constitutional requirements of a jury trial.

---

7. The Sixth Circuit has likewise endorsed the concept. *See United States v. Wilson*, 629 F.2d 439, 443 (6th Cir.1980).

8. L. Moore, *The Jury* 151 (1973) (quoted in Tom Stacy & Kim Dayton, "Rethinking Harmless Constitutional Harmless Error," 88 *Colum.L.Rev.* 79, 139 n. 226 (1988)). Justice Gray, dissenting in *Sparf*, reiterated the power of the jury to ignore law and acquit:

> It is universally conceded that a verdict of acquittal, although rendered against the instructions of the judge, is final, and cannot be set aside; and consequently that the jury have the legal power to decide for themselves the law involved in the general issue of guilty or not guilty.

*Sparf*, 156 U.S. at 172, 15 S.Ct. at 320 (Gray, J., dissenting). But Justice Gray went farther and argued that this was indeed a right and duty, and

not just a power, of the jury. *See id.* at 110–83, 15 S.Ct. at 296–324; *see also Everett v. United States*, 336 F.2d 979, 986 (D.C.Cir.1964) (Wright, J., dissenting) ("[Justice Gray's dissent] went further and reaffirmed the American common law tradition that this was no mere power of the jury, but their proper right.").

9. Jury duty also serves a secondary, civic education purpose:

> The opportunity for ordinary citizens to participate in the administration of justice has long been recognized as one of the principal justifications for retaining the jury system. . . . [W]ith the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process.

*Powers v. Ohio*, 499 U.S. 400, 407, 408, 111 S.Ct. 1364, 1368, 1369, 113 L.Ed.2d 411 (1991).

*Id.* at 99–100, 90 S.Ct. at 1905 ("The relevant inquiry [in determining the constitutionality of factors affecting jury deliberations], as we see it, must be the function that the particular feature [of the jury system] performs and its relation to the purposes of the jury trial.").

■ When measured by this standard, a defendant's right to inform the jury of that information essential "to prevent oppression by the Government" is clearly of constitutional magnitude. That is, if community oversight of a criminal prosecution is the primary purpose of a jury trial, then to deny a jury information necessary to such oversight is to deny a defendant the full protection to be afforded by jury trial. Indeed, to deny a defendant the possibility of jury nullification would be to defeat the central purpose of the jury system.

Argument against allowing the jury to hear information that might lead to nullification evinces a fear that the jury might actually serve its primary purpose, that is, it evinces a fear that the community might in fact think a law unjust. The government, whose duty it is to seek justice and not merely conviction, *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), should not shy away from having a jury know the full facts and law of a case. Argument equating jury nullification with anarchy misses the point that in our criminal justice system the law as stated by a judge is secondary to the justice as meted out by a jury of the defendant's peers. We have established the jury as the final arbiter of truth *and* justice in our criminal justice system; this court must grant the defendant's motion if the jury is to fulfill this duty.

### III

The defendant's request is not novel. Although the Sixth Circuit has not specifically ruled on such a request, other courts of appeals have denied just the type of request before the court today. *E.g., United States v. McDonald,* 933 F.2d 1519, 1526 (10th Cir. 1991); *United States v. Goodface,* 835 F.2d

1233, 1237 (8th Cir.1987); *United States v. Cox,* 696 F.2d 1294, 1298 (11th Cir.1983). I believe, however, that the courts denying such a motion have committed two errors. First, they have lost sight of the true purpose of the jury. Second, they have mistakenly read the Supreme Court's cases on the non-necessity of jury sentencing to be a prohibition on giving any information about sentencing to the jury. That is, they have too broadly construed the Court's cases on segregation of the factfinding and sentencing phases of a prosecution. With these errors taken together, the courts have felt little compunction over denying a motion like Mr. Datcher's.

The Supreme Court, in a line of cases beginning in 1984, has held that the Sixth Amendment does not guarantee a defendant the right to jury sentencing. *See McMillan v. Pennsylvania,* 477 U.S. 79, 93, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986); *Cabana v. Bullock,* 474 U.S. 376, 384–85, 106 S.Ct. 689, 695–96, 88 L.Ed.2d 704 (1986), *overruled in part on other grounds by Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987); *Spaziano v. Florida,* 468 U.S. 447, 459, 104 S.Ct. 3154, 3161, 82 L.Ed.2d 340 (1984). A jury may nevertheless rightfully participate in sentencing. *See Spaziano,* 468 U.S. at 462–65, 104 S.Ct. at 3163–64; *see also Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *Hildwin v. Florida,* 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) (per curiam). Therefore, the Court has held only that jury sentencing is discretionary rather than mandatory. To hold otherwise would go against the great weight of evidence favoring jury participation at sentencing.[10]

There is no statutory proscription against making the jury aware of possible punishment. Instead, courts that have disallowed juror awareness of sentencing contingencies have peremptorily resorted to the factfinding-sentencing dichotomy to justify this denial. For example, the Eighth Circuit, in *United States v. Goodface,* merely stated that

---

**10.** *See, e.g.,* Murphy, *supra* note 5, at 782–84. Evidence favoring jury participation comes from recent state statutes as well; several states allow

jury sentencing in capital and non-capital cases. *See id.* at 781 n. 316.

"the penalty to be imposed upon a defendant is not a matter for the jury" and so it was proper not to inform the jury of a mandatory minimum term. *See* 835 F.2d at 1237. No further justification is given. In making this facile distinction, the courts have created an artificial, and poorly constructed, fence around the jury's role.

■ The Supreme Court, in placing its imprimatur on the segregation of factfinding and sentencing in a case and in giving the judge and prosecution great latitude in "enhancing" a penalty,[11] could not have meant to remove completely jury oversight of punishment. To do so would partially undermine the central role of the jury in our criminal justice system. Overly harsh punishments were the impetus to development of jury nullification.[12] Institution of the jury system was meant to protect against unjust punishment perpetrated by government, not merely unjust conviction, as evidenced by the comments of Alexander Hamilton: "Arbitrary impeachments, arbitrary methods of prosecuting pretended offenses, and *arbitrary punishments* upon arbitrary convictions have ever appeared to me to be the great engines of judicial despotism; and these have all relation to criminal proceedings." *The Fed-*

*eralist No. 83*, at 139 (Alexander Hamilton) (Jacob E. Cooke ed., 1961) (emphasis added). Therefore, even if the jury has no right to set a general sentence, it must retain the power to veto a sentence in a particular case if its oversight function is to be fulfilled. *See Spaziano*, 468 U.S. at 462, 104 S.Ct. at 3163 (In deciding that the Sixth Amendment does not require jury sentencing, the Court did not intend to "denigrate the significance of the jury's role as a link between the community and the penal system and as a bulwark between the accused and the State.").

To provide awareness of a sentence is not to allow sentencing by the jury. Rather, the jury only approves or disapproves of the penalty range as set by Congress, as that range applies to a specific case.[13] This is exactly the oversight purpose intended of the jury. This oversight restores some of the discretion and particularized justice taken away by the Guidelines,[14] but it represents only a minimal yet necessary intrusion on Congress' work: it would be a "radical departure from [the] tradition [respecting the intrinsic worth of all persons] to accept for a defined class of persons, even criminals, a regime in which their right to liberty is de-

11. *See* Elizabeth T. Lear, "Is Conviction Irrelevant?," 40 *UCLA L.Rev.* 1179 (1993) (discussing developments in sentencing law since adoption of the Guidelines and noting the great power given to judges and prosecutors under this scheme).

12. "Centuries ago in England, when the penalty for even the most minimal crime was death, sympathetic juries frequently refused to apply the instructed law and acquitted the defendant before them, while quietly acknowledging that the law had been violated." Benton L. Becker, "Jury Nullification: Can a Jury Be Trusted?," *Trial*, Oct. 1980, at 42; *see also* Murphy, *supra* note 5, at 783 ("To be sure, the eighteenth-century English jury often found facts against the weight of the evidence to mitigate harsh sanctions." (footnote omitted)).

13. The words of Justice Bazelon, in arguing for jury instruction on nullification, aptly state the relative duties of Congress and the jury:

I do not contend that the jury is the exclusive spokesman of the community conscience. When the legislature enacts a criminal prohibition it too speaks on behalf of that conscience. But I cannot assume that every criminal stat-

ute enacts rule of liability without fault. The legislative function is to define and proscribe certain behavior that is generally considered blameworthy. That leaves to the jury the responsibility of deciding whether special factors present in the particular case compel the conclusion that the defendant's conduct was not blameworthy.

*United States v. Dougherty*, 473 F.2d 1113, 1140 n. 5 (D.C.Cir.1972) (Bazelon, J., dissenting). Justice Bazelon continues:

The doctrine permits the jury to bring to bear on the criminal process a sense of fairness and particularized justice. The drafters of legal rules cannot anticipate and take account of every case where a defendant's conduct is "unlawful" but not blameworthy, any more than they can draw a bold line to mark the boundary between an accident and negligence. It is the jury—as spokesman for the community's sense of values—that must explore that subtle and elusive boundary.

*Id.* at 1142.

14. At least as taken away from judges and juries. Prosecutors arguably have greater control than ever in sentencing decisions. *See, e.g.,* Lear, *supra* note 11.

termined by officials wholly unaccountable in the exercise of their power."[15]

■ Congress has not specifically excluded awareness of a possible sentence from juror considerations at trial. The Supreme Court has not mandated that juries be in the dark on the issue of sentence. Those courts so ruling have done so on unconvincing grounds. The power of jury nullification historically has extended to sentencing decisions, and it rightfully should extend to such decisions. This court finds no precedential rationale for rejecting the defendant's motion.[16]

## IV

■ This court desires to make clear that it does not advocate widespread occurrence of jury nullification nor judicial encouragement thereof, not out of fear that anarchy might prevail if nullification were easier or more apparent, but because this remedy is one that should be reserved for only those cases where criminal law and community norms greatly diverge.[17] As the D.C. Circuit eloquently put it:

What makes for health as an occasional medicine would be disastrous as a daily diet. The fact that there is widespread

existence of the jury's prerogative, and approval of its existence as a "necessary counter to case-hardened judges and arbitrary prosecutors," does not establish as an imperative that the jury must be informed by the judge of that power. On the contrary, it is pragmatically useful to structure instructions in such wise that the jury must feel strongly about the values involved in the case, so strongly that it must itself identify the case as establishing a call of high conscience, and must independently initiate and undertake an act in contravention of the established instructions. This requirement of independent jury conception confines the happening of the lawless jury to the occasional instance that does not violate, and viewed as an exception may even enhance, the over-all normative effect of the rule of law. An explicit instruction to a jury conveys an implied approval that runs the risk of degrading the legal structure requisite for true freedom, for an ordered liberty that protects against anarchy as well as tyranny.

*Dougherty*, 473 F.2d at 1136–37.

No instruction on jury nullification was requested by the defendant, and none would

**15.** Sanford H. Kadish, "Legal Norm and Discretion in the Police and Sentencing Processes," 75 *Harv.L.Rev.* 904, 923 (1962); *see also* Lear, *supra* note 11, at 1223 ("Abandoning jury approval undercuts the stability of the criminal justice system ... by interfering with the jury's unique ability to provide political accountability to the larger democratic society.").

**16.** The fact that the defendant requested placement of the issue of punishment before the jury is significant. Where the government or the judge puts before the jury information about a possible *light* sentence, prejudicial error may have occurred. *See Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975). As the Tenth Circuit explained in finding prejudice from a marshal's informing the jury during a lunch break that a defendant could receive a lenient treatment if convicted, "[i]nformation about sentencing or other consequences of a verdict is prejudicial because, if the jury is convinced that a defendant will receive a light sentence, it may be tempted to convict on weaker evidence." *United States v. Greer*, 620 F.2d 1383, 1385 (10th Cir.1980). There is no requirement of symmetry in criminal cases. That is, because the prosecution may not bring up possible light punishment is not a reason for barring the defendant from bringing up possible heavy

punishment. This fact flows from the protections and choices (as in choice of jury or not) assigned to the accused. The defendant may not, of course, make a request that sentencing information be placed before the jury and then plead prejudice if the jury still convicts (i.e., the defendant may not sabotage his own trial).

**17.** *Cf.* Stacy & Dayton, *supra* note 8, at 142:

Properly conceived ... nullification does not refer to a power to acquit for *any* legally irrelevant reason or for no reason at all. Insofar as it is constitutionally significant, jury nullification should contemplate a power to acquit for three categories of legally irrelevant reasons only: a defendant's motivations for committing the crime are so sympathetic that he does not deserve criminal punishment; a prosecution has an impermissible motive for bringing charges such as a desire to silence a political opponent, harass a defendant or further his own career; or the law under which a defendant is prosecuted conflicts with deep-seated contemporary values. Jury nullification, then should not enable the jury to acquit "unreasonably." Instead, it should only permit the jury to acquit for reasons that, though legally irrelevant, reflect fundamental community values.

be given if it were requested. The defendant may, however, put that information before the jury that allows it to decide, independently, whether the law under which the defendant could be convicted is just or unjust. The prosecution, of course, may also discuss this law and argue for its propriety. Mr. Datcher may not be particularly sympathetic to the jurors, and the possible penalties may not seem harsh at all in today's anti-drug environment. But Mr. Datcher is entitled to have the jury perform its full oversight function, and informing the jury of possible punishment is essential to this function. The court finds no good reason for opposing candor.

### ORDER

For the reasons stated in the accompanying Memorandum, the defendant's motion on the issue to place the issue of punishment before the jury is PARTIALLY GRANTED. The defendant may argue possible punishment to the jury but may not voir dire the jury on this issue, nor will the jury be given a special instruction on possible punishment. The government shall be granted a discretionary appeal of this ruling if it so desires.

IT IS SO ORDERED.