**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary Steven STOTTS, also known**
**as Jackie Wayne Simmons,**
**Defendant–Appellant.**

**No. 97–6221.**

United States Court of Appeals,
Sixth Circuit.

Argued March 9, 1999.

Decided May 12, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied June 30, 1999.

---

David W. Camp (argued and briefed), Dowden, Zdancewicz & Camp, Jackson, Tennessee, Gary Steven Stotts, Beamount, Texas, for Defendant–Appellant.

Jennifer L. Webber, Assistant U.S. Attorney (argued and briefed), Memphis, Tennessee, for Plaintiff–Appellee.

Before: JONES, SUHRHEINRICH, and MOORE, Circuit Judges.

## OPINION

SUHRHEINRICH, Circuit Judge.

Defendant Gary Stephen Stotts appeals from his judgment and sentence following a jury trial. The principal issue is whether an undetonated bomb that is merely in close proximity to a methamphetamine laboratory is "used or carried" during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c)(1). We conclude that it is not and REVERSE the district court on this point. We AFFIRM as to Defendant's remaining claims.

## I.

On January 10, 1996, in Savannah, Hardin County, Tennessee several volunteer firemen from the Savannah Volunteer Fire Department responded to a fire at 335 Bucktown Loop. A woman was standing in the yard. Inside the house the firemen found a small fire on a hotplate located on the kitchen table. The kitchen was filled with smoke that had an acrid smell and irritated the firemen's mouths and noses. When the firemen attempted to put out the fire with water, there was a small flash explosion. Fireman Tommy Keith Rich patted out the flames with his hands using fire gloves. He noticed a glowing red powdery substance on the gloves, which he thought was very unusual. Rich turned the gloves over to Deputy Tommy Churchwell, who turned them over to Drug Enforcement Agency ("DEA") agent Joey Mundy. (Churchwell, 78, (Mundy.)). Churchwell told Mundy that the firemen had seen glass funnels, a red powder substance, and a white powder substance. The firemen also stated that during the fire Stotts was outside but eventually came in and started hiding the described items.

Based on this information, Mundy obtained a search warrant and executed it on January 12, 1996. One of the officers posed as a fireman investigating the January 10th fire, while Mundy hid around the corner of the house. After the officer knocked for one or two minutes with no response, Mundy approached the door, opened the screen door, and banged on the door a couple of times. Mundy saw Stotts looking at him. Mundy testified that he immediately yelled "Police Officer. Federal agent. I've got a search warrant. Open the door." Stotts quickly turned from the door and ran. By the time Mundy forced the door open, Stotts had gone up the stairs.

The officers ordered Stotts to come down with his hands up. Instead, Stotts ran down the stairs. While the officers attempted to subdue him, an explosion occurred upstairs. Upstairs Mundy discovered an active methamphetamine laboratory, containing a reaction vessel that was heated by a propane tank. Officers also located the remnants of a detonated homemade explosive device along with an unexploded home made bomb. The exploded bomb was located in the upstairs landing area adjacent to the room containing the reaction vessel. The undetonated bomb was found in a clothes basket located approximately two to three feet from the reaction vessel. A shotgun and revolver were also found near the reaction vessel, along with a police scanner tuned to the local law enforcement frequency, night vision goggles, and the receiving unit from a baby monitor. Transmitters for the baby monitor, wrapped with black tape, were outside the residence on the patio and on the roof. In addition, "The Anarchist's Cookbook," "Poor Man's James Bond," and "The Black Book of Revenge—The Complete Manual of Hard–Core Dirty Tricks and Schemes," were in the same room as the reaction vessel. These books instruct how to make bombs from common, everyday materials.

Downstairs the officers found a semi-automatic pistol, ammunition, and pipes with end caps, along with a wallet containing identification in the name of Jackie Wayne Simmons and a recipe for methamphetamine. The officers also discovered a book on birth certificate fraud, laboratory glass, chemicals and additional propane tanks. When Stotts was arrested, he had a baggie of methamphetamine in his pocket.

The night of his arrest, Stotts identified himself to the officers as Jackie Wayne Simmons. Stotts signed his fingerprint card as Simmons. The water, electricity and cable services for the residence were also in that name. A criminal history check of Jackie Wayne Simmons came back negative. Mundy became suspicious, however, because of Stotts's unusual behavior at the Criminal Justice Complex in Memphis, Tennessee, where he turned to face the rear of the elevator immediately upon entering without being instructed to

do so. Mundy concluded that Stotts must have been at the CJC before. Further investigation revealed Stotts's true identity, and that he had a criminal record.

ATF experts determined that the explosive devices found in the residence were an "improvised incendiary bomb," and a "combination of parts that could be readily assembled into an improvised explosive bomb." Furthermore, based on photographs Defendant offered at trial, one expert testified that the fuse that ignited the explosive device could have burned from fifteen seconds to two minutes at the longest. Another government expert testified that all of the firearms in the house had previously traveled in interstate commerce.

DEA Chemist Theresa Kout testified that the reaction vessel seized on the night of the search did in fact contain methamphetamine. Kout stated that if the reaction had finished cooking, it would have produced approximately 141 grams of methamphetamine.

Stotts was charged on March 11, 1996, with manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count 1); using or carrying a destructive device during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 2); using or carrying an unassembled destructive device during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 3); and being a felon in possession of firearms, namely a shotgun, a semi-automatic pistol and a revolver, in violation of 18 U.S.C. § 922(g) (Count 4).

A jury found Defendant guilty on all four counts. The district court sentenced Defendant to 327 months on Count 1 and 120 months on Count 4, to run concurrently; and 360 months on Counts 2 and 3 to run concurrently to each other, but consecutive to Count 1; for a total of 687 months imprisonment, to be followed by five years of supervised release. Stotts timely appealed.

## II.

### A.

Stotts claims that the district court erred in denying his motion to suppress. Stotts argues that the search warrant lacked probable cause because there was not a sufficient showing that any illegal chemicals or drugs were being manufactured. Stotts also argues that there was insufficient probable cause because Mundy relied upon observations of other individuals without knowledge as to their background or training.

The district court ruled that:

The fact that Agent Mundy actually saw the purple, red, powdery substance on the fireman's glove, coupled with the statement of the fireman that this was a flash explosion, an unusual fire, had an acrid or burning smell to it—that, coupled with Agent Mundy's knowledge that red phosphorous is used in the manufacture of methamphetamines, was at the very least, the basis for probable cause.

. . . . [C]oupled with the testimony—or the statement that there were cans of chemical powders, beakers and tubes and burners, leads the court to conclude that there was probable cause for the issuance of the search warrant.

We review a district court's factual findings in deciding suppression motions for clear error and its conclusions of law de novo. See United States v. Jones, 159 F.3d 969, 973 (6th Cir.1998). We review the issuance of a search warrant under the "totality of the circumstances" to determine whether the facts in the supporting affidavit indicate a fair probability that evidence of a crime would be discovered. See Illinois v. Gates, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." Id. at 243–44 n. 13.

We agree with the district court that sufficient probable cause existed for issuance of the search warrant. The affi-

davit for search warrant which Mundy prepared is entirely consistent with his testimony before the district court. Thus, in determining probable cause, both the district court and issuing magistrate knew that: (1) a fire had reacted in a unique manner to water and produced acrid smoke that was irritating when inhaled; (2) these characteristics are consistent with a chemical fire; (3) defendant attempted to hide laboratory glassware and other items from the firemen; (4) the fireman's gloves used to smother the fire were covered in what appeared to be red phosphorous, a chemical used in the production of methamphetamine; (5) several loaded firearms were located in the residence; and (6) defendant attempted to hide various items from the firemen. In other words, the foregoing facts demonstrated a "substantial chance of criminal activity."

 Nor did the district court or issuing magistrate err in relying on Mundy's experienced assessment of the facts reported to Mundy by the firemen. A judicial officer may rely on an experienced officer's conclusions based on the nature of the evidence and type of offense. *See United States v. Caicedo,* 85 F.3d 1184, 1192–93 (6th Cir.1996). Here, both Mundy's testimony and affidavit represented that he had received training about methamphetamine and clandestine laboratories from the DEA. Further, an affiant may present hearsay, if the issuing judicial officer is reasonably assured that the information is reliable and credible. *See United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds by United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *cf. United States v. Jenkins,* 525 F.2d 819, 823 (6th Cir.1975) (hearsay upon hearsay in affidavit is permissible if the information otherwise has sufficient indicia of reliability).

Stotts also challenges Mundy's failure to submit the red powder to a chemical analysis until after the search warrant was issued. Additionally, he complains that Mundy failed to explain how he could distinguish between a fire caused by chemicals used in methamphetamine production and one caused by ordinary household chemicals. These failings do not invalidate the finding of probable cause. Under the "practical, common-sense" approach dictated by *Gates, see* 462 U.S. at 237–38, the issuing magistrate could reasonably have concluded, based on the totality of the facts, that Stotts was not dealing with merely ordinary household chemicals and that a search of 335 Bucktown Loop would uncover criminal activity. *See Gates,* 462 U.S. at 243–44 n. 13; *Jones,* 159 F.3d at 974.

**B.**

Stotts also contends that the district court erred in denying his motion to suppress because the officers did not knock and announce their presence prior to entering his residence to execute the search warrant, in violation of 18 U.S.C. § 3109. Section 3109 provides that "[a]n officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance." U.S.C.A. § 3109 (West 1985). Stotts therefore claims that the resulting evidence should have been suppressed. *See United States v. Nabors,* 901 F.2d 1351, 1354 (6th Cir.1990) (holding that evidence procured in violation of § 3109 must be suppressed).

The district court credited Mundy's testimony that he knocked, announced his presence and his purpose, and was then refused admittance by Stotts. The court concluded that Mundy was authorized under the statute to enter by any possible means.[1] The court further explained that

---

1. Given this conclusion, the district court stated that it need not consider whether exigent circumstances existed.

I base that upon the testimony that Mr. Stotts saw the officer, left the room, and then came back into the room. That's further buttressed by the testimony that there was an explosion a few moments later. Perhaps it was a coincidental explosion, but the more logical conclusion is that Mr. Stotts left the room went upstairs, ignited the materials, and then came back down. That supports the officer's testimony that Mr. Stotts left the room and then came back. He would only have a reason to do that if he had known the officers were there. That constitutes refusal to admit the officers; therefore, the officers complied with the statute.

Stotts complains that the district court failed to address the discrepancy in Mundy's testimony regarding a curtain on the front door and the extent to which it blocked Mundy's view of the inside of the house. Specifically, Stotts claims that at the detention hearing, Mundy testified that there were no curtains on the front door window, and that at a subsequent suppression hearing, Mundy stated that "[t]here were curtains" and that "they were open."

Although the district court did not expressly address the curtains, we have reviewed Mundy's testimony and find no discrepancy. At the detention hearing, Mundy did not state that there was no curtain. Rather, he stated that "there was no curtain preventing me from seeing through the window." This statement is not inconsistent with Mundy's later statement that the curtains were open. The district court's findings of fact are not clearly erroneous.

■ Stotts also claims that there is no evidence that he refused to admit the officers. We disagree. As the district court found, Stotts's behavior and the detonating of the bomb are proof that he heard the knock and announcement. Therefore, Stotts's failure to respond to the announcement was a refusal to admit. *See* Wayne R. LaFave & Jerold H. Israel, 1 *Criminal Procedure*, § 3.4, p. 231 (1984).

In sum, the district court did not err in holding that the requirements of § 3109 were met. Given this conclusion, we need not decide the Government's argument that exigent circumstances justified a violation of the knock and announce rule.

### C.

■ Stotts argues that the district court erred in denying his motion to inform the jury of possible penalties, relying on *United States v. Datcher*, 830 F.Supp. 411 (M.D.Tenn.1993) (holding that defendant could inform the jury of the mandatory sentence to provide the jury with information to exercise its nullification power). Our decision in *United States v. Chesney*, 86 F.3d 564, 574 (6th Cir.1996) (holding that the *Datcher* decision is "contrary to Supreme Court pronouncements on this issue") defeats Stotts's argument. As we observed in *Chesney*, the Supreme Court has held that juries should be instructed not to consider a defendant's possible sentence unless the jury has a specific role in sentencing. *See id.* at 574; *see also Shannon v. United States*, 512 U.S. 573, 582, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994) (holding that "[it] is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed") (internal quotations omitted).

In Stotts's case, the jury had no sentencing function and no statute required that the jury be informed of the possible penalties resulting from a guilty verdict. The district court did not err in refusing to inform the jury of possible penalties. *See Chesney*, 86 F.3d at 574.

### D.

■ Stotts argues that the district court erred in denying his motion for a mistrial. While explaining to the jury how Stotts's true identity came to be known, Mundy stated that Stotts "has an extensive criminal record." Stotts immediately moved for

a mistrial. The district court denied the motion and instructed the jury as follows:

> Members of the jury, the last statement of the witness had to do with the defendant's criminal history. Let me instruct you at this point that the defendant's criminal history is not an issue in this case. It's not relevant in this case except to the extent that in count four the defendant is accused of being a prior convicted felon. But other than that, the defendant's criminal history has nothing to do with this case. The defendant is only charged with the four counts that are named in the indictment, and you'll disregard any reference to any of the defendant's criminal history except to the extent that it's necessary to prove that the defendant was, in fact, a convicted felon on the date of these alleged incidents. So disregard that last comment of the witness.

Stotts cites *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), in support of his position. *Old Chief* held that a trial court abuses its discretion when it rejects a defendant's offer to stipulate his status as a felon for purposes of 18 U.S.C. § 922(g)(1). The *Old Chief* court reasoned that the admission of the name and nature of a defendant's prior felony conviction can be prejudicial because the defendant's prior felony conviction was relevant solely to prove an element of § 922(g)(1). Here, Stotts stipulated prior to Mundy's testimony that he had at least one felony conviction.

*Old Chief* does not help Stotts. First of all, neither the name nor the nature of any of Stotts's prior convictions was revealed to the jury. Thus, the precise concern at issue in *Old Chief* was not implicated here. Moreover, this court has rejected the proposition that *Old Chief* created a per se rule that it cannot be harmless error when a jury is informed of a defendant's prior conviction for serious violent felonies. *See United States v. Daniel*, 134 F.3d 1259, 1263 (6th Cir.), *cert. denied,* — U.S. ——, 119 S.Ct. 83, 142 L.Ed.2d 65

(1998). More importantly, the remark was isolated and the district court gave an immediate curative instruction. *See United States v. Harris*, 165 F.3d 1062, 1066 (6th Cir.1999) (holding that government witness's allusion to a prior arrest did not require a new trial since it was isolated and district court gave an immediate curative instruction); *United States v. Forrest*, 17 F.3d 916, 920 (6th Cir.1994) (and cases cited therein). We therefore reject this claim.

### E.

■ Next, Stotts contends that the district court erred in failing to unseal the transcript of an in camera hearing in which, according to Stotts, the Government presented *Brady* material.[2] Stotts filed a separate motion to unseal, which this court denied by order, deferring the matter to the merits panel.

Stotts sought information about Patricia Renee Carter, the woman who was present at the time of the fire. When Carter was found, she was driving a car that had two five gallon containers of methamphetamine in the trunk. Carter was not charged, however.

Stotts questions the decision to not charge Carter despite her "heavy involvement" in the methamphetamine production. Stotts maintains that Carter was a government informant. Stotts contends that reviewing the transcript of the in camera hearing could have substantially assisted in the preparation of his defense.

This Court has reviewed the sealed transcript and records and we find no exculpatory or impeachment evidence requiring disclosure. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (exculpatory evidence); *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (impeachment evidence); *Schledwitz v. United States*, 169 F.3d 1003, 1011 (6th Cir.1999). Specifically, we find no information establishing

2. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

that Carter was an informant, or any exculpatory or impeachment evidence requiring disclosure. The district court did not err in refusing to unseal the transcript, *see United States v. Streit,* 962 F.2d 894, 900 (9th Cir.1992), or in ruling that there was no *Brady* material.

### F.

Section 924(c) of Title 18 of the United States Code imposes a five year minimum term of imprisonment upon a person who "during and in relation to a drug trafficking crime . . . uses or carries a firearm." 18 U.S.C.A. § 924(c) (West .Supp.1998). "Firearm" includes "any destructive device." 18 U.S.C.A. § 921(a)(3)(D) (West 1976). "Destructive device" means "any explosive, incendiary, or poison gas . . . bomb." *Id.* § 921(a)(4)(i).

Stotts argues that the district court should have granted his motion for judgment of acquittal on to Count 3 of the indictment, which charges him with using and carrying an unassembled destructive device in violation of 18 U.S.C. § 924(c). Stotts argues that the evidence failed to establish he either "used" or "carried" a destructive device under the statute.

In arguing that the "use" prong was not met, Stotts points to Agent Charles Stephen Parris's testimony. Parris testified that during the search he discovered the device in a clothes basket, and that the fuse was not engaged and no attempt to ignite the fuse had been made. In *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court decided "whether evidence of the proximity and accessibility of a firearm to drugs or drug proceeds is alone sufficient to support a conviction for 'use' of a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c)(1)." *Id.* at 138–39. The *Bailey* court held that the "use" of a firearm during and in relation to a narcotics trafficking crime "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.* at 143. The Court defined "active employment" as including "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at 148. The *Bailey* court rejected the theory that mere possession could constitute a "use": "[T]he inert presence of a firearm, without more, is not enough to trigger § 924(c)(1)." *Id.* at 149.

The Government responds that although the destructive device listed in Count 3 was technically "unassembled" because the fuse was not actually inserted in the hole of the pyrodex can, the device was nonetheless "used" in the course of the drug offense because it was "displayed." The Government's reliance on "display" is inappropriate here. When a firearm is "displayed" in a drug trafficking offense, the firearm becomes an operative factor in relation to the predicate offense. That is because, although silent, a gun has an "obvious and forceful presence": "Don't mess with the trafficker or the drugs." *See Bailey,* 516 U.S. at 148 (noting that even a reference to a firearm may constitute a "use" because it is "calculated to bring about a change in the circumstances of the predicate offense . . . , just as the silent but obvious and forceful presence of a gun on a table can be a 'use'"). On the other hand, "[i]f the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.'" 516 U.S. at 149. In other words, the "display" of the gun sends a message and is in that sense "actively employed" during the drug offense.

Stotts's activity, however, was clandestine. Thus, the bomb was not "used" like a firearm is "used" during a drug deal. Admittedly, the undetonated bomb was located nearby in case the laboratory needed to be destroyed, as evidenced by the detonated bomb. This evidence merely established was proximity and accessibility. After *Bailey,* however, it is indisputable that such placement with the intent to put the firearm to a future

active use does not satisfy § 924(c)(1). *See Bailey*, 516 U.S. at 149–50. The evidence was therefore insufficient to support Stotts's conviction on Count 3.

We note that the only other two circuits that have addressed similar issues have reached comparable conclusions. In *United States v. Pearce*, 146 F.3d 771 (10th Cir.1998), the Tenth Circuit held that the "use" prong of § 924(c) was not satisfied when the evidence merely showed that bombs were stored near drugs, in light of evidence that each bomb required a fuse to detonate it. The *Pearce* court rejected the government's argument that the bombs were used for intimidation or to protect the drugs because "it failed to show that the weapons were 'disclosed or mentioned by the offender' and thus did not show that they were actively employed." *Id.* at 775. Similarly, in *United States v. Manning*, 79 F.3d 212 (1st Cir.1996), the First Circuit held that the government had not shown "use" because the evidence simply demonstrated that the defendant carried six pipe bombs along with drugs in a briefcase "and nothing more." *Id.* at 216.

Alternatively, the Government argues that the "carry" prong is satisfied because the bomb was within Stotts's immediate reach and immediately available for use, citing *United States v. Mauldin*, 109 F.3d 1159 (6th Cir.1997); *United States v. Allen*, 106 F.3d 695 (6th Cir.), *cert. denied*, 520 U.S. 1281, 117 S.Ct. 2467, 138 L.Ed.2d 223 (1997); and *United States v. Myers*, 102 F.3d 227 (6th Cir.1996). The Government's argument is highly disingenuous. Each of these cases also references the element of transportation. *See Mauldin*, 109 F.3d at 1162; *Allen*, 106 F.3d at 702; *Myers*, 102 F.3d at 237 n. 7. Moreover, each of those cases also referred to *United States v. Moore*, 76 F.3d 111 (6th Cir. 1996), where we stated: "A definition of 'carry' that takes only availability into account ignores the term's most obvious connotation, i.e., physical transportation. Immediate availability is therefore a necessary, but not sufficient determinant." *Id.* at 113; *see also Hilliard v. United States*, 157 F.3d 444, 449 (6th Cir.1998);

*United States v. Washington*, 127 F.3d 510, 514 (6th Cir.1997) (and cases cited therein), *cert. denied*, —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 2718 (1998). *See generally Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). *Cf. United States v. Feinberg*, 89 F.3d 333, 340 (7th Cir.1996) (holding that "carry" prong was established when co-conspirators transported pipe bombs and one held a bomb in his lap while traveling to blow up a target); *Manning*, 79 F.3d at 216 (holding that evidence established "carrying" when the defendant walked from his vehicle to the garage holding a briefcase containing a handgun, pipe bombs and drugs). In short, there was insufficient evidence to satisfy either the "use" or "carry" prong of § 924(c)(1), and the district court erred in not granting Stotts's motion for acquittal.

### G.

Stotts also claims that the evidence was insufficient to convict him on Count 2. Stotts argues that there is no evidence to show that Stotts ignited the device, and therefore no showing of either "use" or "carry."

This argument is without merit. The evidence established that when Stotts saw the officers, he ran upstairs. Then, after he ran down the stairs, an explosion in the upstairs portion of the residence occurred. The Government offered expert testimony that the fuse on the bomb could have burned as little as fifteen seconds or possibly as long as one to two minutes. Stotts was the only person present in the house, other than the law enforcement officials. A jury could reasonably infer that Stotts detonated the bomb, and therefore "used" it for purposes of § 924(c)(1), to cover up his drug making activities. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Given this clear outcome, we need not address the Government's strained argument that the "carry" prong was satisfied.

## H.

■■■ Stotts further argues that the district court erred by admitting evidence pertaining to the unassembled device, which unduly prejudiced the jury's consideration of Count 2. This evidence was clearly probative of Stotts's intent to use a bomb in connection with a drug trafficking crime. We find no error.

## I.

■■■ Stotts contends that his convictions for having violated both 18 U.S.C. § 924(c) (Count 2) [3] and 18 U.S.C. § 922(g) (Count 4) violate double jeopardy. Stotts claims that his possession of the guns and the bombs was one "continuous act."

This claim must be rejected. Count 4 required proof that Stotts had a prior felony conviction and possessed a firearm. Count 2 required that Stotts used or carried the specified destructive device during and in relation to a controlled substance offense. Thus, the § 924(c) charge and the § 922(g) charge each required proof of an element that the other did not. The Double Jeopardy Clause of the Fifth Amendment was not violated. *See United States v. McKinney,* 919 F.2d 405, 417 (7th Cir.1990), *overruled on other grounds by United States v. Spears,* 965 F.2d 262 (7th Cir.1992); *United States v. Garrett,* 903 F.2d 1105, 1115 (7th Cir.1990).[4] *See generally Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Moreover, several courts have also held that the sentences conform to congressional intent to impose cumulative punishment and that they therefore are not violative of either the Double Jeopardy or Due Process Clauses of the Fifth Amendment. *See United States v. Young,* 936 F.2d 1050, 1056 (9th Cir.1991); *United States v. Lawrence,* 928 F.2d 36, 38–39 (2d Cir.1991); *Garrett,* 903 F.2d at 1114. *See generally Whalen v. United States,* 445 U.S. 684, 689, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)

("The Double Jeopardy Clause ... precludes federal courts from imposing consecutive sentences *unless authorized by Congress to do so.*" ) (emphasis added).

Stotts cites *United States v. Jones,* 533 F.2d 1387 (6th Cir.1976), in which a defendant who possessed a single firearm for several months was charged with five separate counts of being a felon in possession of a firearm under § 922(g). *Jones* is inapposite. Count 2 dealt with a destructive device and Count 4 dealt with possession of a shotgun, pistol, and revolver. This claim is without merit.

## J.

■■■ Stotts claims that the district court erred in allowing testimony regarding the pipes, end caps, and various bomb-making books in his residence on the night of the search. Stotts claims that the evidence was impermissible "other crimes" evidence under Fed.R.Evid. 404(b). The Government responds that the evidence was relevant to both the elements of the crime, and Stotts's defense, which included allegations that the Government had tampered with the evidence to make it appear that these were destructive devices.

> The district court ruled that
>
> it is some circumstantial evidence that the device that actually blew up was, in fact, a bomb and that it was not as a result of an accident or a mistake or a fire that got loose in the drug lab. That's one of the issues that will come up in this case, and it seems to me this is at least some evidence of that.

Immediately after the witness testified, the court instructed the jury that

> [t]he defendant is not charged in any way with possessing that destructive device, and that's not being admitted for you to decide whether or not he's guilty of possessing that destructive device.

---

**3.** Stotts also raised this challenge as to Count 3. Because we have vacated that conviction, we need not factor it into this analysis.

**4.** This court has held the same in an unpublished opinion. *See United States v. Hayes,* Nos. 93–5012, 93–5013, at *4, 1994 WL 262055 (6th Cir. June 14, 1994).

That's being admitted only for the limited purpose of your consideration of whether or not the devices alleged in counts 2 and 3 were, in fact, destructive devices.

We agree. We think this evidence was clearly relevant and admissible for a proper purpose; that is, to show that the "devices" were intended to be destructive devices as contemplated by § 924(c), and that the explosion was not merely coincidence resulting from the presence of various chemicals near the reaction vessel. We therefore hold that the district court did not abuse its discretion in admitting this evidence because it was not impermissible "prior bad acts" evidence under Fed. R.Evid. 404(b).

### III.

For the foregoing reasons, we **REVERSE** Stotts's conviction as to Count 3 and **REMAND** to the district court with instructions to **VACATE** the conviction. We **AFFIRM** the remainder of the district court's judgment.