UNITED STATES of America,
Plaintiff-Appellee,

v.

Johnnie Lee BOWMAN,
Defendant-Appellant.

No. 82–1461.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1983.

Decided Nov. 22, 1983.

1104

Susan A. Ehrlich, Phoenix, Ariz., for plaintiff-appellee.

Colin F. Campbell, Phoenix, Ariz., for defendant-appellant.

Before TANG and ALARCON, Circuit Judges, and TAYLOR *, District Judge.

TANG, Circuit Judge.

Johnnie Lee Bowman, Jr. was indicted for assault with a dangerous weapon with intent to do bodily harm in violation of 18 U.S.C. §§ 1153 (1976) and 113(c)(1948).

* Honorable Fred M. Taylor, United States District Judge for the District of Idaho, sitting by designation.

The jury returned a verdict of guilty upon the lesser included offense of assault by striking, beating or wounding in violation of 18 U.S.C. § 113(d) (1948), a misdemeanor. Bowman contends on appeal that the district court committed reversible error by allowing evidence of a prior assault conviction and by refusing to give certain jury instructions relating to unconsciousness and self-defense. We find no error and affirm the conviction.

The record shows that on August 13, 1981, Bowman arrived at the home of Lena Descheenie, where he observed his estranged common-law wife, Yvonne Descheenie. The government maintained that Yvonne Descheenie was in an outhouse and that Bowman forced his way into the outhouse and pulled her out, threatening to take her hostage. According to the government's theory, Bowman put a knife to Yvonne's throat when she resisted and began to cry for help. Bowman's explanation at trial was that Yvonne started to scream upon seeing him approach and that he merely put his arms around her in an attempt to calm her.

In either event, Yvonne's grandmother, mother and sister came running to her rescue. In the ensuing melee, Yvonne was able to free herself, suffering only minor injuries, while Bowman was severely beaten by other members of the Descheenie family. At his trial, Bowman attempted to prove that he had acted in self-defense and was rendered unconscious after being hit in the head by one of Yvonne's relatives.

Less than a year before, Bowman had injured Bennie Claw, another relative of Yvonne Descheenie. Bowman had been searching for Yvonne at the Claw residence when he struck Mr. Claw several times in the head with a rifle. Bowman was convicted of assault and sentenced to six months in prison. He had been released only two months before the incident at the Descheenie residence.

■ The admission by the district court of the evidence relating to this prior assault conviction was not an abuse of discretion. Evidence of prior crimes is admissible whenever relevant to an issue other than the defendant's criminal propensity. Fed. R.Evid. 404(b); *United States v. Mehrmanesh,* 689 F.2d 822, 830 (9th Cir.1982). It was the government's contention that Bowman attacked Yvonne because of his belief that she was responsible for his earlier conviction, thus characterizing the assault on Yvonne as an act of revenge. Although the victim in the prior case was not involved here, there was a sufficient factual relationship between the two incidents to render the prior conviction relevant to the issue of Bowman's motive for the assault upon Yvonne. The potential for unfair prejudice in this instance was clearly outweighed by the probative value of the evidence.

■ Neither are we persuaded that the district court's decision not to give the requested instructions on unconsciousness and self-defense was reversible error. It is well established that a defendant is not entitled to a jury instruction on a defense theory unless there is some evidence before the jury to support it. *United States v. Collom,* 614 F.2d 624, 632 (9th Cir.1979), *cert. denied,* 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980). It requires more than a mere plea or speculation that if anything occurred it must have occurred while unconscious or in self defense. The record discloses no evidence to provide a factual foundation for either unconsciousness or self defense. A review of the evidence on self defense or unconsciousness requires no assessment of the credibility of any witness at trial. There is no testimony that defendant was alleged to do anything after loss of consciousness. Further, defendant's theory of self defense is unsupportable absent the admission of any defensive actions taken by him in fear of his safety. Thus, the district court properly denied defendant's requested jury instructions on self defense and unconsciousness. The record is simply devoid of any evidence suggesting that Bowman acted in self-defense or was unconscious prior to the time he is alleged to have grabbed and assaulted Yvonne.

The conviction is AFFIRMED.

ALARCON, Circuit Judge, dissenting.

I respectfully dissent.

The district court's refusal to give instructions covering the factual defense presented to the jury compels reversal.

A clear understanding of the conflicting versions of the facts presented by the government and the defense is essential to assess the prejudicial impact of the district court's erroneous ruling.

I.

A. *Summary of the Government's Evidence*

On August 13, 1981, at 10:30 a.m., Yvonne Descheenie was standing in the outhouse near her mother's home when she saw Johnnie Lee Bowman, Jr. approaching the door. She remained inside because she was afraid of Bowman. Bowman asked her to open the door. Ms. Descheenie did nothing and remained silent. Bowman grabbed the door and forced it open by breaking the latch. Bowman told her he was going to take her hostage and that she had gotten him into a lot of trouble. Ms. Descheenie refused to go with him. Bowman then grabbed her and tried to push her outside.

Ms. Descheenie held onto a board next to the door. Bowman then removed a knife from his pocket and held it first in his left hand and then in his right hand. He placed the knife blade to Ms. Descheenie's throat. She struggled and began to scream. Bowman rubbed the knife across her throat.

Aroused by Ms. Descheenie's screams, her mother, sister, and grandmother came to her rescue. As they approached, Bowman told Ms. Descheenie's mother that he was going to kill her daughter. At this time Ms. Descheenie pushed the knife away from her throat, cutting her finger in the process. She fell to the ground. Ms. Descheenie's mother hit Bowman with a board. Mary Jane Descheenie hit Bowman with a ham-

mer above his ear with such force that she heard his bones crack. Bowman fell to the ground. He appeared to be unconscious for a time. Mary Jane Descheenie saw a knife in each of Bowman's hands during the affray.

Yvonne Descheenie received a superficial laceration on her neck which was eight (8) centimeters long. She also had a laceration on her index finger.

### B. *Summary of the Defense Testimony*

Johnnie Lee Bowman, Jr. testified that on August 13, 1981, he walked from his cousin's home to the Descheenie resident to see his son and Yvonne Descheenie, his common-law wife. When he arrived he saw his wife walking towards the outhouse. He approached her when she was "between a fourth to a half way there." She began yelling "Mom". Bowman placed his arms around her to calm her. He then saw Yvonne Descheenie's mother approach with a board in her hands. She struck her daughter and then hit Bowman. Bowman has no memory of anything that occurred thereafter until he regained consciousness in the hospital. Bowman received a skull fracture and is now deaf in his right ear as the result of the blows he received. He did not have a knife at any time that he was at the Descheenie premises.

### II.

### A. *Refusal to Instruct on a Defense Theory*

The district court refused to give instructions on the defense theories of unconsciousness and self-defense. In refusing these instructions the district court stated:

> The reason the Court is rejecting the self-defense instruction and the unconscious instruction is that in the totality of the circumstances it has been adduced by the evidence presented in this case the assault, if any, upon which the defendant was indicted occurred prior to any subsequent activity where the family of the asserted victim came to her aid. If, *under the evidence as the Court views it,* an

assault with a deadly weapon was committed, *the Government's case indicates* that it was prior to and was completed by the time the asserted victim's family came to her aid.

RT: Vol. II. pp. 148–149 (emphasis added).

### III.

### A. *Analysis*

The evidence presented at trial was in conflict on several critical points. The government's witnesses testified that an assault with a deadly weapon began in the outhouse when Bowman placed a knife against the victim's throat. Later, Bowman moved the knife across her throat and told her mother he was going to kill Yvonne Descheenie.

Bowman testified his wife was somewhere between the residence and the outhouse when he placed his arms around her to calm her. He did not have a knife in his possession and did not assault anyone prior to being pounded into unconsciousness.

Thus, the theory of the defense is quite clear. No assault with a knife took place during the time Bowman was conscious. If Bowman assaulted anyone, it occurred after he was rendered unconscious and as a reflexive action to protect himself from attack from the Descheenie family. This defense theory was supported by Bowman's testimony and the inferences which the jury might draw from the testimony presented by both sides. The evidence is uncontradicted that Bowman was beaten into unconsciousness and suffers from amnesia as to any events which followed the blows he received to his head.

A defendant in a criminal case is entitled to have the jury consider any thing of defense which is supported by the law, and which has some foundation in the evidence, however, weak in the eyes of the district court. *United States v. Bessesen,* 445 F.2d 463, 467 (7th Cir.1971).

The majority relies on *United States v. Collom,* 614 F.2d 624 (9th Cir.1979) in support of its conclusion that the district court correctly rejected Bowman's instructions on

unconsciousness and self-defense. A careful reading of the issue before this court in *Collom* discloses that that decision is factually distinguishable. In *Collom,* the district court read an instruction to the jury submitted by the defendant. In this instruction the jury was told that the jury could consider the sanity of the actual perpetrator of the crime in determining whether a person accused of aiding and abetting the principal is guilty of a crime. After partial deliberations the jury advised the court that it was confused by the instruction. The district court, over objection, told the jury to disregard the instruction. We held that the district court did not commit error in withdrawing the instruction because "Stephen's novel theory about the effect of his brother's sanity on his own criminal intent was adequately covered by other instructions." 614 F.2d at 632. In the matter before us the district court simply did not instruct on unconsciousness and self-defense.

The well-settled principle that it is prejudicial error to refuse to instruct on the theory of defense was stated eloquently in *Tatum v. United States,* 190 F.2d 612 (D.C. Cir.1951) in the following words:

> We do not intend to characterize the case for the defense as either strong or weak. That is unnecessary, for 'in criminal cases the defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility. *He is entitled to have such instructions even though the sole testimony in support of the defense is his own.'*

*Id.* at 617 (emphasis added).

In rejecting Bowman's instructions on unconsciousness and self-defense, the district court committed two fatal errors.

First. The district court weighed the evidence, and determined that the government's witnesses told the truth concerning the use of a knife and that an assault occurred prior to the time the family assaulted Bowman. In stating that the assault was complete prior to the victim's rescue, "under the evidence as the court views it," the district court improperly denied to the defendant the right to have the jury decide who spoke the truth as to when or if any assault occurred, whether the defendant was armed with a knife, and if the law would excuse his conduct if the jury believed his testimony.

The importance of instructing a jury on the law applicable to the defense presented by an accused was well stated long ago in *Williams v. United States,* 131 F.2d 21 (D.C. Cir.1942).

> It is almost, if not, as important to a defendant to have a jury instructed on the law applicable to his particular case by the judge, who knows the law, as to have a jury of his peers. The latter is supposed to safeguard our institution of fair trial by insuring impartiality. But of what value is an open mind, if it does not know, with clear delineation, the issues upon which it is to pass judgment? Just as a lawyer might be ignorant in a meeting of scientists, so may a juror be in his casual acquaintance with the law. The jury, a group of responsible citizens, is entitled to this legal instruction if it must accept the duty of passing upon the very life and death of a man. The law requires it.

*Id.* at 23.

Second. In deciding whether an instruction embodying the defense's factual theory must be given to the jury, the district court is required to look at the evidence presented by the *defendant.* Here, the district court denied these essential instructions because "the government's case indicates" the assault was completed prior to the time the family arrived. The district court thus ignored its duty to consider the evidence presented by Bowman that no assault occurred prior to the time the family came to Ms. Descheenie's aid.

### IV.

*Conclusion*

The district court, in violation of Bowman's right to a jury trial, resolved conflicts

in the evidence against the defendant as to whether he committed an assault with a knife, and, if he acted unconsciously or in self-defense.

The defendant was entitled to an acquittal if he was able to raise a reasonable doubt that he was unconscious when an assault was committed or that he acted in self-defense.

The failure to instruct the jury on the only factual and legal defense presented to the government's case denied Bowman a fair trial.

I would reverse and remand for a new trial free of these fatal constitutional infirmities.