**UNITED STATES of America, Appellee,**

v.

**Aaron Dewayne GOODFACE, Appellant.**

**No. 87–5109.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 31, 1987.

Decided Dec. 23, 1987.

Michael Strain, White River, S.D., for appellant.

John Ulrich, Asst. U.S. Atty., Sioux Falls, S.D., for appellee.

Before McMILLIAN, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

This appeal arises from the conviction of Aaron Dewayne Goodface for assault with a dangerous weapon, 18 U.S.C. § 113(c) (1982), and use of a firearm during a crime of violence, 18 U.S.C. § 924(c) (Supp. III 1985). Goodface argues that the district court erred in refusing to instruct the jury on self-defense, and that the mandatory sentencing provision of the firearms statute violates due process and conflicts with the statutory scheme for crimes committed in Indian country, 18 U.S.C. § 1153 (Supp. III 1985). We affirm the judgment entered by the district court.[1]

The altercation giving rise to these charges occurred on July 25, 1986, in Lower Brule, South Dakota. The victim, Doyle Medicine Eagle, testified that shortly after he had arrived at the residence of Ruth Flute, Dewayne Goodface began to threaten him and attempted to hit him. Medicine Eagle ran out the back door, pursued by Goodface, and the two exchanged blows. Owen Goodface and Delane Flute then came out of the house and pulled Medicine Eagle to the ground. The two Goodfaces and Flute repeatedly struck Medicine Eagle, pulled his hair and kicked him. Dewayne Goodface denies having been in the Flute house that morning.

Medicine Eagle testified he then ran to the nearby house of a friend, Myron Ziegler. All agree that Dewayne Goodface drove up in a car and got out of it with a rifle. From there the testimony differs widely, although all agree that a shot was

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

fired. Insofar as the varying testimony bears upon the issues before us, we discuss it in more detail below.

Goodface was charged with one count of assault with a dangerous weapon, 18 U.S.C. § 113(c), and one count of use of a firearm during a crime of violence, 18 U.S.C. § 924(c). Federal jurisdiction was based on 18 U.S.C. § 1153.[2] The jury found Goodface guilty on both counts, and he was sentenced to two consecutive five-year terms.

■ Goodface raises two issues on this appeal. His first contention is that the district court erred in refusing to instruct the jury on self-defense. He correctly argues that a defendant is entitled to such an instruction if he makes a timely request which is supported by evidence and accurately states the law. *United States ex rel. Means v. Solem*, 646 F.2d 322, 328 (8th Cir.1980). The government argues that Goodface did not raise this issue with a proper objection before the district court. *See* Fed.R.Crim.P. 30. At trial, Goodface submitted a requested instruction in writing which was taken from this circuit's model instructions. Manual of Model Criminal Jury Instructions for the Eighth Circuit, Model Instruction No. 4.04 (1985) (revised 1986). During the instruction conference the district court asked whether the parties had any objections to its proposed instructions, and Goodface's counsel stated he "would request the one that I did request on self-defense." The district court then discussed in detail its reasons for refusing the instruction. After the instructions were read to the jury, the court asked if there were any exceptions, and defense counsel said there were not. The government presents no authority to support its argument that the request and objection did not properly raise the issue below. *Cf. United States v. Bear Ribs*, 722 F.2d 420, 423–24 (8th Cir.1983).

■ On the record before us, however, a self-defense instruction was not supported by the evidence. Medicine Eagle testified that as he knocked on the door of the Ziegler house, he heard Dewayne Goodface drive up. He turned and saw Goodface step out of the car, then reach beneath the front seat for an object which Medicine Eagle thought was a club. Medicine Eagle tried to pull a stake from the ground to protect himself. Failing that, he backed away from Goodface, who had emerged from the car with a rifle in his hands. Neighbors testified that Goodface pointed the rifle at the unarmed Medicine Eagle, approached him, and threatened to "blow his head off."

Goodface testified that he drove up, got out of the car, then turned around to grab the rifle, which was lying on the floor under the front seat. He had the rifle by the barrel, which was pointing to the driver's side, and when he started to turn around, Medicine Eagle was standing there. Medicine Eagle asked him what he was doing there and Goodface told him it was none of his business and to get out of the way. Goodface tried to go around him and Medicine Eagle reached out, grabbed the rifle, and tried to take it away. The two started to struggle and the gun went off. Ziegler then came out of the house and hit Goodface with a shovel, and Goodface states that he then lost consciousness.

We see nothing in any version of the testimony to support a self-defense instruction. The district court rejected the instruction because Goodface denied having taken any defensive action, which might otherwise constitute assault, in fear of his safety. *See United States v. Bowman*, 720 F.2d 1103, 1105 (9th Cir.1983). Insofar as Goodface's alighting from the car with a rifle and his attempt to go around Medicine Eagle could be considered to make him the aggressor, or at least indicate that he failed to withdraw from the conflict when he could do so safely, no plea of self-de-

2. Goodface stipulated that he was an Indian and that the alleged acts occurred within Indian country, as defined in 18 U.S.C. § 1151 (1982). *See Solem v. Bartlett*, 465 U.S. 463, 467 n. 8, 104 S.Ct. 1161, 1164 n. 8, 79 L.Ed.2d 443 (1984);

*United States v. Dupris*, 612 F.2d 319, 320 (8th Cir.1979), *vacated and remanded on other grounds*, 446 U.S. 980, 100 S.Ct. 2959, 64 L.Ed.2d 836 (1980).

fense was warranted. 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 5.7 (1986); Annotation, *Comment Note: Withdrawal, After Provocation of Conflict, as Reviving Right of Self–Defense,* 55 A.L.R. 3d 1000, 1002–10 (1974); 6 Am.Jur.2d *Assault and Battery* § 77 (1963). A struggle over a gun was held inadequate to establish self-defense in *United States v. Cuny,* 784 F.2d 853, 854 (8th Cir.1986). The district court did not err in concluding that there was insufficient evidence to support the giving of such an instruction.

Goodface's second contention is that the mandatory sentencing provision of section 924(c) applicable here violates due process and conflicts with the statutory scheme set forth in 18 U.S.C. § 1153 for crimes committed in Indian country. The government argues that where, as here, two statutes specifically authorize cumulative punishment, the prosecutor may seek and the court may impose such punishment in a single trial, regardless of whether the two statutes proscribe the same conduct. *United States v. Doffin,* 791 F.2d 118, 120–21 (8th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 210, 93 L.Ed.2d 140 (1986). This is true, and it removes any double jeopardy claim from the case, *id.,* but it is not responsive. Goodface's position is based on due process and section 1153, not the double jeopardy prohibition.

■ Goodface contends that the portion of section 924(c) applied to him violates due process because it deprives the trial judge of discretion to impose a lesser penalty, and because the jury was not informed that a verdict of guilt would automatically result in a five-year prison term. Goodface correctly argues that under section 924(c), the court may not place a prisoner on probation, suspend his sentence, order the sen-

tence to run concurrently with another term of imprisonment, or render the prisoner eligible for parole during the mandatory five-year term.[3] It is also true that the court did not tell the jury that a conviction under section 924(c) would require a five-year sentence. Nonetheless, we believe that the mandatory sentencing provision of section 924(c) applicable here is consistent with due process.

■ In non-death penalty cases, "the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative." *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). Moreover, the authority to define and fix the punishment for felony convictions is "purely a matter of legislative prerogative." *Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980); *United States v. McClinton,* 815 F.2d 1242, 1244 (8th Cir.1987). Thus, although a disproportionate mandatory sentence may in extreme cases violate the eighth amendment, *Solem v. Helm,* 463 U.S. 277, 288–90, 103 S.Ct. 3001, 3008–09, 77 L.Ed.2d 637 (1983); *Rummel,* 445 U.S. at 274 n. 11, 100 S.Ct. at 1139 n. 11, due process is not violated merely because a statute divests the trial judge of discretion to sentence as he might wish. *See McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986); *McClinton,* 815 F.2d at 1244. *See also United States v. Smith,* 818 F.2d 687, 691 (9th Cir.1987). This is so even if the net effect of the statute is to place wide discretion in the prosecutor to choose or refuse to indict on multiple felonies. *McClinton,* 815 F.2d at 1244. We hold that the mandatory sentencing provision of section 924(c) applicable here does

---

3. Section 924(c) provides:

   Whoever, during and in relation to any crime of violence * * * including a crime of violence * * * which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence * * * be sentenced to imprisonment for five years * * *. Not-

withstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence * * *. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment herein.

not violate due process merely because it divests the district court of sentencing discretion.

We also reject Goodface's claim that the jury should have been told that a verdict of guilt would require the court to impose a five-year prison term. In the federal system, the penalty to be imposed upon a defendant is not a matter for the jury, and it is proper to caution the jury, as the court did here, against any consideration of possible punishment in their deliberations. *United States v. Briscoe,* 574 F.2d 406, 408 (8th Cir.), *cert. denied,* 439 U.S. 858, 99 S.Ct. 173, 58 L.Ed.2d 165 (1978). We see no reason why the rule should be different in cases of mandatory rather than discretionary judicial sentencing. In either type of case, the jury's duty is to determine the guilt or innocence of the accused solely on the basis of the evidence adduced at trial. *Taylor v. Kentucky,* 436 U.S. 478, 483–85, 98 S.Ct. 1930, 1933–34, 56 L.Ed.2d 468 (1978). Its role is unaffected if Congress validly chooses to remove sentencing discretion from the court. We hold that the mandatory sentencing provision of section 924(c) applicable here is consistent with due process.[4]

We also believe that section 924(c) is consistent with 18 U.S.C. § 1153. Goodface relies on *United States v. Eagle,* 539 F.2d 1166 (8th Cir.1976), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977), in which we held that the terms "any felony" in section 924(c)(1) did not include assault with a dangerous weapon in violation of section 1153. *Id.* at 1173 (interpreting 18 U.S.C. § 924(c)(1) (1970)). At that time, section 1153 listed several offenses, including assault with a dangerous weapon, which were required to be "defined and punished in accordance with the laws of the State in which such offense was committed." 18 U.S.C. § 1153 (1970). As a result, Indians prosecuted for such offenses were often subject to different definitions and penalties under state law than non-Indians prosecuted for the same offenses under federal law. *See United States v. Johnson,* 637 F.2d 1224, 1231 (9th Cir.1980). To avoid constitutional difficulties, *Eagle,* 539 F.2d at 1172 n. 6, this court held that "Congress did not intend for a subsection 924(c)(1) prosecution to be available where the underlying felony is based on [section] 1153." *Id.* at 1172.

Congress thereafter amended sections 113 and 1153 to shift assault with a dangerous weapon and several other offenses into the category of crimes defined and punished under federal law alone. Indian Crimes Act of 1976, Pub.Law. No. 94–297, 90 Stat. 585 (1976). *See generally* H.R. Rep. No. 90–1038, 94th Cong., 2d Sess. 1–5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 1125, 1125–29. Current section 1153 subjects an Indian committing assault with a dangerous weapon to "the same law and penalties as all other persons" committing the same offense "within the exclusive jurisdiction of the United States." 18 U.S. C. § 1153.[5] Reference to state law is re-

---

4. In *McMillan v. Pennsylvania, supra,* the Supreme Court held that Pennsylvania's Mandatory Minimum Sentencing Act was consistent with due process and the sixth amendment right to trial by jury. 106 S.Ct. at 2420. That case was more difficult than the present one, because the Pennsylvania statute treated visible possession of a firearm as a sentencing factor to be determined by the court by a mere preponderance of the evidence. 106 S.Ct. at 2414. Section 924(c), by contrast, treats the use or carrying of a firearm as an element of a separate offense. As a result, every ultimate fact affecting Goodface's sentence was submitted to the jury and subject to proof beyond a reasonable doubt. *United States v. Howard,* 504 F.2d 1281, 1286 (8th Cir. 1974). After *McMillan,* we consider this an *a fortiori* case.

The death penalty cases cited by Goodface are not to the contrary. If a state has determined that death should be an available penalty for certain crimes, then it must allow the sentencer, whether judge or jury, to consider the individual circumstances of the defendant and his crime. *Spaziano v. Florida,* 468 U.S. 447, 460, 104 S.Ct. 3154, 3162, 82 L.Ed.2d 340 (1984). But because the death penalty differs from all other forms of punishment, constitutional decisions in capital cases are of limited assistance in non-capital cases. *Rummel,* 445 U.S. at 272, 100 S.Ct. at 1138; *Woodson,* 428 U.S. at 305, 96 S.Ct. at 2991. Due process simply does not require an individualized sentencing determination in most criminal cases. *McMillan,* 106 S.Ct. at 2420; *Woodson,* 428 U.S. at 304, 96 S.Ct. at 2991.

5. The terms "within the exclusive jurisdiction of the United States" refer to the law in force in federal enclaves, including Indian Country. *Johnson,* 637 F.2d at 1232.

quired only where the listed offenses are "not defined and punished" by appropriate federal law. *Id.* Section 113(c) defines assault with a dangerous weapon and establishes the maximum penalty for its violation.[6] Thus, with the exception of crimes committed by one non-Indian against another, *Solem v. Bartlett,* 465 U.S. at 465 n. 2, 104 S.Ct. at 1163 n. 2; *United States v. McBratney,* 104 U.S. (14 Otto) 621, 624, 26 L.Ed. 869 (1882), all persons violating section 113(c) are now subject to identical statutory provisions.

■ As a result of these amendments, the concerns we voiced in *Eagle* regarding the unequal treatment of Indian defendants under sections 924(c) and 1153 no longer have force. An Indian indicted under these sections may only be subjected to the section 924(c) sentence; section 1153 no longer carries its own increased penalty for Indian defendants. 18 U.S.C. § 1153. *Contra Eagle,* 539 F.2d at 1171. Nor is there any indication in the legislative history of the 1976 amendments that Congress intended to exempt Indians from the mandatory sentencing provisions of section 924(c). *See* H.R.Rep. No. 90-1038, *supra. Contra Eagle,* 539 F.2d at 1171-72. Finally, because section 1153 no longer carries its own penalty for use of a firearm, the deterrence function of section 924(c) cannot be served by application of section 1153 alone. *Contra Eagle,* 539 F.2d at 1172. For these reasons, we hold that a section 924(c) prosecution is available where the underlying felony is based on sections 113(c) and 1153. To the extent that *Eagle* is inconsistent with this holding, it must be considered superseded by the 1976 amendments of sections 113 and 1153.

Having considered and rejected all of the claims raised by Goodface on this appeal, we affirm the judgment entered by the district court.

---

**6.** Section 113(c) provides:

Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

(c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both.