**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AYAD ABO-SEBA,

Defendant - Appellant.

No. 05-3476

D. Kan.

(D.C. No. 03-CR-20033-CM)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

Ayad Abo-Seba was convicted by a jury of two counts of assault with a dangerous weapon with intent to do bodily harm in violation of 18 U.S.C. § 113(a)(3). He was sentenced to 87 months imprisonment. He appeals from his convictions, alleging various trial errors. In a supplemental opening brief, Abo-Seba also raises an ineffective assistance of counsel claim. Because this is not one of the "rare instances" in which the record is sufficiently developed, we decline to address his ineffective assistance of counsel claim and dismiss it

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

without further discussion.  *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).  We affirm in all other respects.

## I.  FACTUAL BACKGROUND[1]

On March 2, 2003, Abo-Seba was an inmate housed in the United States Penitentiary in Leavenworth, Kansas.  When Correctional Officer Richard Harris attempted to serve Abo-Seba his meal, Abo-Seba spit in his face.  Harris reported the incident to his supervisor, Edward McIntire, who reported it to Lieutenant Randall Simek.  Simek, along with Harris, McIntire and Lieutenant Dennis Treadway, went to Abo-Seba's cell, where they observed Abo-Seba crying and cutting himself with a razor.  Simek attempted to calm Abo-Seba and get him to relinquish the razor.  Abo-Seba refused to give up the razor, instead raising the razor to his neck and threatening to kill himself.  At that point, Simek decided to enter the cell.

Once the officers entered the cell, Abo-Seba's demeanor changed—he turned the razor from himself to the officers.  He lunged towards Simek with the razor, barely missing Simek's chest.  However, Abo-Seba caught the side of Simek's neck with the razor on the back swing.  Simek and Treadway reached for their flashlights.  Treadway hit Abo-Seba once with his flashlight and hit the razor a few times.  The officers then charged Abo-Seba, pinning him against a

---

[1] Because Abo-Seba was convicted, we recite the facts in the light most favorable to the government.  *United States v. Duran*, 133 F.3d 1324, 1326 n.1 (10th Cir. 1998) (quotations omitted).

wall and removing the razor from his hand.  Once the razor was secured, they restrained Abo-Seba and took him to the prison hospital.  Throughout the encounter and en route to the hospital, Abo-Seba made verbal threats such as "Death to Americans," "Fuck you American pigs" and "I'll kill you, I'll kill myself[,] I'll kill you all."  (R. Vol. VII at 18, 30, 67.)

## II.  PROCEDURAL BACKGROUND

Abo-Seba was indicted with assaulting Simek with a dangerous weapon with intent to do bodily harm in violation of 18 U.S.C. § 113(a)(3) (Count I) and assaulting Treadway with a dangerous weapon with intent to do bodily harm also in violation of 18 U.S.C. § 113(a)(3) (Count II).  The court appointed an attorney to represent him.  Several months later, the court granted the attorney's motion to withdraw based on Abo-Seba's refusal to meet with him; a new attorney was appointed.  Thereafter, the court granted the attorney's request for Abo-Seba to undergo a competency evaluation.  The examiners concluded Abo-Seba did not suffer from a mental disorder, was competent to stand trial and was able to assist in his defense.  The court agreed with these conclusions and set the case for trial.

After the jury had been picked and sworn, Abo-Seba informed the court he wished to plead guilty to Count II.  The government agreed to dismiss Count I in exchange for his plea.  The court proceeded with a change of plea hearing.  After a thorough inquiry concerning Abo-Seba's rights, the court accepted his guilty plea and set the matter for sentencing.  Thereafter, defense counsel sought leave

to withdraw based on Abo-Seba's desire to withdraw his guilty plea, which would potentially require his counsel to be called as a witness. The court granted the request and appointed new counsel.

Subsequently, Abo-Seba filed a motion to withdraw his guilty plea, claiming he pled guilty out of fear of retaliation from prison officials. After a hearing, the court allowed Abo-Seba to withdraw his plea. He proceeded to trial. The jury found him guilty of both counts.

At the first sentencing hearing, Abo-Seba's counsel moved to withdraw because Abo-Seba would not cooperate, calling counsel a coward, a criminal and an agent of the government. The court granted the motion and continued the sentencing hearing so yet another attorney could be appointed. New counsel was appointed and the parties re-appeared for sentencing. As the court was announcing the sentence, Abo-Seba attacked the probation officer. After a recess during which Abo-Seba was removed from the courtroom, the court described the attack on the record:

> [Abo-Seba] rose from the [defense] table, had an object in his hand, I believe it was either a pen or a pencil, lunged towards the probation officer . . . and actually grabbed ahold of her collar, her blouse, and then did several striking motions towards her with the object in his hand. Fortunately . . . the marshals . . . immediately secured him, . . . [wrestling] him forcibly to the ground . . . . He has been physically restrained and physically removed from the courtroom. In regards to our sentencing hearing, I would note for the record that it appears that, through his assault or his physical attack of the probation officer, she did sustain some minor physical injuries. She . . . has either abrasions or scratches on her shoulder blade or her back . . . .

-4-

(R. Vol. III at 29-30.)  Based on this incident, the court decided, without objection, to resume the sentencing hearing outside Abo-Seba's presence.  The court sentenced him to 87 months imprisonment.[2]

### III.  DISCUSSION

Abo-Seba argues:  (1) the court erred in failing to *sua sponte* instruct the jury on self-defense, (2) the court erroneously allowed prejudicial captions on photographs to be admitted into evidence and (3) the government materially misstated the law and facts during its closing argument.  However, as he concedes, he never requested or tendered a self-defense instruction before his actual trial nor did he object to the court's failure to provide such instruction.[3] He also did not object to the admission of the captions or the government's alleged misstatements during closing arguments.  Therefore, our review of all three issues is for plain error.  *United States v. Gonzalez-Montoya*, 161 F.3d 643, 650 (10th Cir. 1998) (government's misstatements during argument); *United States v. Hatatley*, 130 F.3d 1399, 1405 (10th Cir. 1997) (denial of jury

---

[2] As a result of the courtroom incident, Abo-Seba was charged with assault with a dangerous weapon on an officer or employee of the United States resulting in bodily injury in violation of 18 U.S.C. § 111(a)(1), (b).

[3] Before Abo-Seba's first trial, which was vacated based on his desire to plead guilty, his attorney filed proposed jury instructions including a self-defense instruction.  However, when Abo-Seba later withdrew his guilty plea and proceeded to trial, his new attorney did not tender a self-defense instruction or renew the prior request for such instruction.

instruction); *United States v. Gomez*, 67 F.3d 1515, 1524 (10th Cir. 1995) (admission of evidence). Under the plain error analysis, a defendant must show there was "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Duran*, 133 F.3d 1324, 1330 (10th Cir. 1998) (quotations omitted).

A. Failure to Instruct on Self-Defense

Abo-Seba argues the district court erred in failing to *sua sponte* instruct the jury on self-defense because the evidence supported such instruction. He testified the guards entered his cell and beat him without provocation and from that point on, his sole intent was self-protection. He asserts that had the jury credited this testimony, it could have found he acted in self-defense. He further claims he was not required to testify he intended to injure the guards in order to be entitled to a self-defense instruction. Rather, his testimony that he struggled with the guards after they assaulted him was sufficient to justify the instruction.

The government argues the court did not err in failing to instruct the jury on self-defense because there was no evidence to support such instruction. It contends Abo-Seba's subjective belief that the guards were going to assault him upon entering his cell is insufficient to sustain a self-defense claim. Additionally, during his trial testimony, Abo-Seba denied assaulting the officers with a razor or

-6-

in any other manner. The government asserts,"'I did not do it' is an entirely

different position from 'I did it, but I acted in self-defense.'" (Appellee's Br. at

10.) Therefore, it argues neither the law nor the evidence supported a self-

defense instruction.[4]

In general, "a defendant is entitled to an instruction as to any recognized

defense for which there exists evidence sufficient for a reasonable jury to find in

his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). This is true even

if the defendant seeks instructions on inconsistent defenses: "[A] criminal

defendant is entitled to instructions on *any* defense, including inconsistent ones,

that find support in the evidence and the law and failure to so instruct is

reversible error." *United States v. Trujillo*, 390 F.3d 1267, 1274 (10th Cir. 2004);

*see also Mathews*, 485 U.S. at 63-65 (rejecting government's claim that defendant

was not entitled to an entrapment instruction because it was inconsistent with his

---

[4] Abo-Seba points out the government's position on appeal contradicts the position it took in the district court. Specifically, in its memorandum in support of an obstruction of justice sentencing adjustment based on Abo-Seba perjuring himself at trial, the government stated: "If [Abo-Seba's] testimony was accepted by the jury, [it] could have acquitted [him] believing he was acting in self-defense." (R. Vol. I, Doc. 98 at 3.) This could potentially be the basis for a judicial estoppel argument. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (stating judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase") (quotations omitted). We need not address it, however, because Abo-Seba has not adequately briefed it. *See Utahns for Better Transp. v. United States Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002) ("[I]ssues will be deemed waived if they are not adequately briefed. "). He merely points out the inconsistency; he has not sought estoppel or cited supporting legal authority.

denial of liability).

The government's evidence did not support a self-defense instruction. That evidence demonstrated Abo-Seba was the aggressor and his assaultive actions were not taken to defend himself. *See* 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIM. LAW, § 10.4(e) (2d ed. 2003) ("It is generally said that one who is the aggressor in an encounter with another . . . may not avail himself of the defense of self-defense."). Specifically, the guards involved in the incident testified that before they took any action toward Abo-Seba to remove the razor from him, other than attempting to calm him and get him to drop the razor, Abo-Seba swung the razor at them.

Abo-Seba does not contend the government's evidence supported a self-defense instruction. Rather, he relies exclusively on his testimony, as follows. He was born in Iraq but has lived in the United States since 1994. When Simek, Treadway, McIntire and Harris came to his cell without a camera, priest or physician assistant, he knew, based on past experience, they were coming to hurt him and he was scared. He told the guards if they were coming to beat him, he would hurt himself. The guards entered the cell. Specifically, he said:

> **[Abo-Seba:]** When they opened the door and entered towards me, I started backing, going back, and trying to cut myself to show them that I'm serious and there was crying, crying because I'm scared.
>
> **[Defense Attorney:]** And what happened after that?
>
> **[Abo-Seba:]** They came to me, all of them, they -- I was hurting

cutting myself. I didn't try to cut any of them and there was backing up so they hold my right hand where the blade was there. Then a flashlight, they start beating me on my head and the baton, they were having a baton, black stick, beating me on my head and on my back and they were hitting me with the fist. They put me on the mattress. They chained me, they handcuffed me and chained my legs and after they took off my clothes they took me to the hospital only with the underwear.

[**Defense Attorney:**] And did you try to cut any of them?

[**Abo-Seba:**] No.

[**Defense Attorney:**] And had they immediately pinned your arm with the knife in it?

[**Abo-Seba:**] I didn't resist, actually when they hold my hand I didn't resist.

(R. Vol. VII at 80-81.)

And, on cross-examination:

[**Prosecutor:**] And it's your testimony here before the jury that you did not resist when the officers came in?

[**Abo-Seba:**] No, I never resist but I was afraid.

[**Prosecutor:**] . . . And you're denying that you swung the razor at the officers?

[**Abo-Seba:**] I was scared of them not to hit me.

[**Prosecutor:**] I'm sorry. Let me ask you this. Did you swing the razor at the officers?

[**Abo-Seba:**] No.

[**Prosecutor:**] And did you cut Officer Simek [referring to a picture of Simek's neck injury] on the neck there under the ear? The question is yes or no, did you cut him?

**[Abo-Seba:]** This is a nail scratch not a razor.

**[Prosecutor:]** So you're saying you did not cut him?

**[Abo-Seba:]** No.

**[Prosecutor:]** And you didn't try to cut anybody else, . . . yes or no? Yes or no, did you try to cut anybody else?

**[Abo-Seba:]** No, I did not try. Mr. Simek, he knows that I never tried to do anything wrong for him.

(*Id.* at 87-88.)

In determining whether this testimony supported a self-defense instruction, *United States v. Goodface*, 835 F.2d 1233 (8th Cir. 1987), and *United States v. Bowman* 720 F.2d 1103 (9th Cir. 1983), are instructive. In *Goodface*, Goodface was charged with, *inter alia*, assault with a dangerous weapon based on allegations he threatened and shot an unarmed victim. According to the government's evidence Goodface emerged from his vehicle with a rifle, pointed it at the victim, approached the victim and threatened to blow the victim's head off. Goodface testified he never pointed the rifle at the victim but instead the victim grabbed the rifle and tried to take it away. When the victim did so, a struggle ensued and the gun went off. Goodface claimed the district court erred in failing to instruct the jury on self-defense. The Eighth Circuit determined neither the government's nor Goodface's evidence supported such instruction and such instruction would be improper "because Goodface denied having taken any

-10-

defensive action, which might otherwise constitute assault, in fear of his safety." 835 F.2d at 1235.

Similarly, in *Bowman*, the Ninth Circuit rejected a claim for a self-defense instruction. There, the government alleged the victim was in an outhouse, Bowman forced himself in, pulled the victim out, threatened to take her hostage and put a knife to her throat when she resisted and began to cry for help. Bowman, on the other hand, testified the victim started to scream upon seeing him and he merely placed his arms around her in an attempt to calm her. The Ninth Circuit concluded Bowman's "theory of self defense is unsupportable absent the admission of any defensive actions taken by him in fear of his safety." 720 F.2d at 1105.

Like the defendants in *Goodface* and *Bowman*, Abo-Seba denied taking any defensive actions against the guards in fear of his safety. The court did not err in failing to *sua sponte* give a self-defense instruction.

B. Prejudicial Captions on Photographs

During trial, the government admitted into evidence ten photographs, Government Exhibits 2-11, taken by Lieutenant Treadway. Each photograph contained a caption indicating who took the photograph, the date and time the photograph was taken, and a brief description. Abo-Seba does not complain about the admission of the photographs, only the admission of the captions on Exhibits 3-8 and 10. The captions read in relevant part:

-11-

Exhibit 3 (picture of Lieutenant Simek's neck injury): "Lt. Simek, assaulted by inmate ABO-SEBA"

Exhibit 4 (picture of Lieutenant Simek): "Lt. Simek, assaulted by inmate ABO-SEBA"

Exhibit 5 (picture of Officer McIntire): "Officer McIntire, assaulted by inmate ABO-SEBA"

Exhibit 6 (picture of Officer McIntire's leg injury): "Officer McIntire, assaulted by inmate ABO-SEBA"

Exhibit 7 (picture of cuts to Abo-Seba's abdomen and arm): "Inmate ABO-SEBA . . ., assault on staff"

Exhibit 8 (picture of cuts to Abo-Seba's abdomen and neck): "Inmate ABO-SEBA . . ., assault on staff"

Exhibit 10 (picture of Lieutenant Simek's injury to forehead): "Lt. Simek, assaulted by inmate ABO-SEBA"

(Appellant's Opening Br., Attachment 1.)

Abo-Seba claims the admission of these captions was error because they were (1) inadmissible hearsay under Rule 802 of the Federal Rules of Evidence, (2) irrelevant under Rule 402 of the Federal Rules of Evidence because they merely restated the charges in the indictment and the captions under the pictures of McIntire did not relate to the indictment as he was not charged with assaulting McIntire and (3) evidence of "other crimes" under Rule 404(b) of the Federal

Rules of Evidence because he was not charged with assaulting McIntire. Additionally, he contends even if the captions were relevant, their probative value was substantially outweighed by the danger of unfair prejudice under Rule 403 of the Federal Rules of Evidence. Specifically, he asserts the captions allowed the government to introduce as evidence the ultimate conclusion the government wanted the jury to draw and told the jury what result to reach. Because his trial was a "swearing match" between himself and the guards, each asserting the other was the first to assault, Abo-Seba argues the error in admitting the captions affected his substantial rights and seriously affected the fairness of his trial. (Appellant's Opening Br. at 29.)

The government claims the district court did not err in admitting the captions. It argues the captions were not hearsay because they were not offered to prove the truth of the matter asserted. It also claims the probative value of the photographs, which documented the victims' injuries and Abo-Seba's self-inflicted injuries, substantially outweighed any prejudice caused by the captions. It asserts it was the photographs, not the captions, which were the evidence being presented to the jury. Indeed, neither party emphasized the captions during trial. The government also attacks Abo-Seba's claim that the photographs' probative value was substantially outweighed by the prejudice caused by the captions. It contends the captions did not state anything not testified to by Simek and McIntire, who were subject to cross-examination. Lastly, the government argues

-13-

even if it was error to admit the captions, the error did not affect Abo-Seba's substantial rights because the other evidence against him supported the jury's verdict.

Because Treadway identified the subject of each photograph, the captions could have been omitted. And, had Abo-Seba properly objected to the captions, the district court could have taken corrective action -- striking them, re-wording them or instructing the jury as to their limited use -- rendering an appeal on this issue unnecessary. *See United States v. Hubbard*, 603 F.2d 137, 142 (10th Cir. 1979) ("Unless a party is required to timely object before the trial court, the trial judge and opposing counsel are deprived of any opportunity to take corrective action, if such be required, in order to assure an orderly, fair and proper trial."). Nevertheless, we need not decide whether their admission was error because their presence on the photographs (whose admission is not challenged) did not affect Abo-Seba's substantial rights, *i.e.*, they did not affect the outcome of the district court proceedings. *See United States v. Olano*, 507 U.S. 725, 734 (1993). Nor did they seriously affect the fairness, integrity or public reputation of judicial proceedings. The captions merely restated the charges against him; there is no indication they were emphasized to the jury; and they were no more prejudicial than the testimony of the guards, who alleged Abo-Seba assaulted them with the razor. If there was error, it does not satisfy the third (and certainly not the fourth) prong of the plain error inquiry.

C. <u>Government's Misstatements During Closing Argument</u>

Abo-Seba claims the government made two material misstatements of law and fact during its closing argument. First, during its initial closing argument, the government discussed the second element of the charged offense, *i.e.*, that Abo-Seba acted with specific intent to do bodily harm. It claimed it had proved the second element based on Abo-Seba's words ("I will kill you. I will kill you all. I will kill all you Americans.") and actions (swinging the razor at the guards and cutting Simek on the neck). (R. Vol. VIII at 23.) It further stated: "There's been absolutely no evidence, none at all, that these guards did anything other than talk to the defendant until the time that he started swinging at them." (*Id.* at 24.) Abo-Seba challenges this statement, claiming it was factually and legally erroneous because he testified it was the guards who started the altercation by coming into his cell and beating him and his testimony, like the guards', constituted evidence.

Second, in its rebuttal closing argument, the government asked the jury to evaluate the credibility of Abo-Seba's testimony:

> Ladies and Gentlemen, you get to be the judge of who is telling the truth in this case. I'm going to ask you to evaluate the defendant's testimony. He claims that he was beat with fists, batons, chair legs, but in the photographs of the scene, there aren't any chairs in there, there's no room for a chair in his cell, or is he suggesting they went out to the office and brought back a chair to beat him with when they could just as easily continued beating him with their fists and batons? He went to the extreme to bring up chair legs.

(*Id.* at 34-35.) Abo-Seba challenges this statement because he never mentioned chair legs during his testimony.

While not suggesting the government's misstatements were intentional, Abo-Seba claims they were, nevertheless, unfairly harmful because they undercut his credibility, the central focus of the trial, and tainted the jury's ability to fairly evaluate his testimony. In closing instructions prior to closing argument, the court advised the jury that the arguments of counsel were not evidence. Abo-Seba contends the instruction did not cure the harm because it was not given until the end of trial and nothing linked the instruction to the government's misstatements.

The government admits its statement that there was no evidence the guards did anything other than talk to Abo-Seba before he started swinging at them was erroneous; it should have said there was no "credible" evidence. (Appellee's Br. at 19 (emphasis omitted).) However, it claims, considering its closing argument as a whole, the jury could not reasonably have taken the statement to mean Abo-Seba's testimony did not constitute evidence but rather that his testimony was unworthy of belief. Moreover, the mistake was but one statement made during the course of the entire trial and the jury instructions adequately cured any error. Therefore, the government asserts the statement did not amount to plain error or render the trial fundamentally unfair.

As to the chair legs statement, incredibly, the government claims it was not

-16-

improper. However, it concedes the transcript of Abo-Seba's testimony contains no mention of chair legs. Nevertheless, the government contends this statement merely reflects its innocent misrecollection of Abo-Seba's testimony.[5] It also argues the chair legs statement did not affect the outcome of the trial given the strong evidence of guilt. It further maintains the statement was just one of several bases it used to attack Abo-Seba's credibility and the jurors were properly instructed that the attorneys' arguments were not evidence.

"We use a two-step process when evaluating claims of prosecutorial misconduct." *United States v. Ivy*, 83 F.3d 1266, 1288 (10th Cir. 1996). First, we determine whether the conduct was improper; if so, we decide whether the improper conduct warrants reversal. *Id.* "In evaluating such incidents for plain error, we will reverse only if, after reviewing the entire record, we conclude that

---

[5] The government acknowledges in its brief it is not sure how it came up with the chair legs statement but explained:

> [Abo-Seba], while having some English speaking ability, testified with the assistance of a translator. [He] would often begin answering questions in broken English, either before the translator could begin speaking, or as the translator would begin speaking. Thus, cross talk was common during [his] testimony. Furthermore, any conversations between [Abo-Seba] and translator, even if they were in English, would not be transcribed by the court reporter.

(Appellee's Br. at 22 (citation omitted).) At oral argument, the government reiterated it was not sure where the chair legs comment came from but stated it made its closing argument without the aide of a transcript. It further alleged the chair legs comment was reflected in its notes and may have come from Abo-Seba's testimony that the guards chained his legs.

the error is obvious and one that would undermine the fairness of the trial and result in a miscarriage of justice." *Gonzalez-Montoya*, 161 F.3d at 650 (quotations omitted).

The evidence in a trial includes the sworn testimony of witnesses who have first-hand knowledge of the facts. *See* CLIFFORD S. FISHMAN, JONES ON EVIDENCE, CIVIL & CRIMINAL, § 1:3 (7th ed. 1992). This, of course, includes a defendant's testimony. In this case, Abo-Seba testified the guards came in his cell and started beating him without provocation. Consequently, the government's statement that there was absolutely no evidence the guards did anything other than talk to Abo-Seba until the time he started swinging at them misstated both the law and facts. Similarly, the government's chair legs comment misstated the facts. Abo-Seba did not testify the guards beat him with chair legs. Both of the government's comments were improper. *Ivy*, 83 F.3d at 1288 (mischaracterization of evidence during closing argument improper); *United States v. Hollis*, 971 F.2d 1441, 1455 (10th Cir. 1992) ("Certainly, it is improper for the prosecution to misstate the law in its closing argument.").

Nevertheless, the improper comments did not rise to the level of plain error because they did not affect the fairness of the trial or result in a miscarriage of justice. Placed in context, it is clear the government's statement that there was no evidence the guards did anything other than talk to Abo-Seba before he started swinging at them could only be taken to suggest Abo-Seba's testimony was not

credible. As to the chair legs comment, although it was an attack on Abo-Seba's credibility and the jury could have acquitted him had they found him credible *and* disbelieved the guards, it was just one of several such attacks. Importantly, the physician assistant who examined Abo-Seba after the incident testified Abo-Seba was agitated, cursing and saying he wanted to kill himself. He further testified there was no evidence Abo-Seba was beaten and the only wounds he observed were superficial cuts Abo-Seba inflicted upon himself with the razor. The chair legs comment was just one comment, made in rebuttal closing argument, throughout the course of the two-day trial. *Gonzalez-Montoya*, 161 F.3d at 651 ("We generally do not reverse a conviction if the conduct that the defendant challenges was merely singular and isolated.") (quotations omitted).

The jury instructions also mitigated any potential harm. The jurors were instructed they were "the exclusive judges of the facts proved, the weight of the evidence, and the credibility of the witnesses," the "[s]tatements and arguments of counsel are not evidence in the case unless made as admissions or stipulations of facts," "[t]he evidence in the case always consists of the sworn testimony of the witnesses" and they were "to consider only the evidence in the case." (R. Vol. I, Doc. 71 at 3, 7.) We presume juries follow their instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

The evidence against Abo-Seba was substantial. The guards involved in the incident testified Abo-Seba assaulted them and the photographs of their

injuries supported this testimony. The physician assistant who examined Abo-Seba contradicted Abo-Seba's self-serving testimony. Given this strong evidence of guilt, the context in which the misstatements were made (closing argument) and the jury instructions, we cannot say the government's improper statements, even when considered collectively, affected Abo-Seba's substantial rights.[6]

D. Cumulative Error

Abo-Seba argues that to the extent we find multiple harmless errors, their cumulative effect rendered his trial fundamentally unfair.

> A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless. Unless an aggregate harmlessness determination can be made, collective error will mandate reversal, just as surely as will individual error that cannot be considered harmless. The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error--courts look to see whether the defendant's substantial rights were affected.

*United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990).

Step three of plain error analysis is, in wording and effect, identical to harmless error analysis – an error not affecting substantial rights is not

---

[6] The case relied upon by Abo-Seba, *United States v. Carter*, is distinguishable. 236 F.3d 777 (6th Cir. 2001). There, the Sixth Circuit concluded the government's misstatements during closing argument satisfied the plain error analysis. *Id.* at 793. Unlike this case, however, the misstatements in *Carter* pertained to a key witness's testimony and evidence of the defendant's guilt was weak. In particular, some witnesses had initially identified another individual as the burglar. *Id.* at 786.

reversible.[7]  Here the district court did not err in failing to *sua sponte* instruct the

jury on self-defense.  We assumed error (arguendo) in allowing explicit captions

to remain on exhibits sent to the jury and found error in the government's

misstatements during closing argument.  But in each instance the error did not

affect Abo-Seba's substantial rights.  We need not contemplate the esoteric

aspects of cumulative step three plain error review[8] because both errors (assuming

there were two) considered in combination did not affect Abo-Seba's substantial

rights.

---

[7] Harmless error is "[a]ny error, defect, irregularity, or variance that does not affect substantial rights . . . ."  Fed. R. Crim. P. 52(a).

[8]  To date, we have never addressed the question of how to, if at all, incorporate into the cumulative error analysis plain errors that do not, standing alone, necessitate reversal.  Some circuits combine all non-reversible errors (i.e., harmless errors and plain errors failing to necessitate reversal) into their cumulative error analysis.  *See*, *e.g.*, *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir.2005).  Other circuits, in contrast, appear to review separately any cumulative plain errors.  *See United States v. Necoechea*, 986 F.2d 1273, 1283 (9th Cir.1993) ("we review the cumulative impact of the possible plain errors for plain error").

*United States v. Barrett*, 496 F.3d 1079, 1121 n.20 (10th Cir. 2007); *see also* *United States v. Jones*, 468 F.3d 704, 711 (10th Cir. 2006).

We **DISMISS** Abo-Seba's ineffective assistance of counsel claim.  We

**AFFIRM** in all other respects.

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge